UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LUPE ARIAS and JAVIER ARIAS,

        Plaintiffs,

  v.

FCA US LLC,

        Defendant.

Case No. 2:18-cv-00392-JAM-AC

ORDER GRANTING DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL AND LAW FIRM

    Lupe and Javier Arias ("Plaintiffs") sued FCA US, LLC ("Defendant" or "FCA") for violations of state and federal law related to defects in their motor vehicle. See Compl. Defendant now moves the Court to disqualify Plaintiffs' counsel and firm. ECF No. 8. For the reasons set forth below, the Court GRANTS Defendants' motion.[1]

### I.    FACTUAL AND PROCEDURAL BACKGROUND

    On January 11, 2018, Plaintiffs sued FCA under the Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790, et seq.) and Magnuson Moss Warranty Act (15 U.S.C. § 2301, et seq.) for defects

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for June 5, 2018.

1

that arose in their 2015 Jeep Cherokee. See Compl. Plaintiffs are represented by Patrea Bullock and her law firm, the Law Offices of Patrea R. Bullock, who they found through a Google search. Decl. of Lupe Arias, ECF No. 9-2, pp. 3-4. FCA removed the case to this court on February 20, 2018. See Notice of Removal, ECF No. 1.

On April 24, 2018, FCA filed a motion to disqualify Bullock and her law firm. Mot., ECF No. 8. FCA submitted two declarations with the motion: one from Matthew Proudfoot, a managing partner with the law firm of Gates, O'Doherty, Gonter & Guy LLP (GOG&G), and counsel of record for FCA US LLC ("FCA") and another from Jon Universal, a partner in the law firm of Universal & Shannon, LLP (U&S). ECF Nos. 8-1, 8-2. Bullock was employed as a senior associate at U&S for eight months from fall 2016 to May 2017. Bullock then worked as an independent contract employee for GOG&G from June through October 2017. At both firms, Bullock represented FCA on motor vehicle defect ("lemon law") cases for between 25% to 50% of her total billing.

According to Proudfoot and Universal, Bullock "personally determined and advised FCA about how to respond regarding the particular claim, evaluated the defenses available to FCA, overall defense strategy, and engaged in regular contact with the client regarding the defenses and strategies of various cases." Proudfoot Dep. at ¶ 5; Universal Dep. at ¶ 6.

Bullock filed this case against her former client three months after representing FCA in other lemon law cases.

///

///

///

II. OPINION

A. <u>Legal Standard</u>

This District has adopted the State Bar of California's Rules of Professional Conduct and applicable court decisions, as its own standard of professional conduct. See E.D. Cal. L.R. 180(e). Accordingly, California law governs motions to disqualify counsel. <u>In re Cty. of Los Angeles</u>, 223 F.3d 990, 995 (9th Cir. 2000) (applying state law in determining matters of disqualification). California Rule of Professional Conduct 3-310(E) provides:

> A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

Cal. R. Prof'l Conduct 3-310(E).

Disqualification of counsel lies within the sound discretion of the district courts. <u>Gas-A-Tron of Arizona v. Union Oil Co. of California</u>, 534 F.2d 1322, 1325 (9th Cir. 1976). "[W]hile disqualification is a drastic measure and motions to disqualify are sometimes brought by litigants for improper tactical reasons, disqualification is not 'generally disfavored.'" <u>M'Guinness v. Johnson</u>, 196 Cal. Rptr. 3d 662, 681 (Ct. App. 2015). In deciding a motion for disqualification, the Court must balance parties' right to counsel of their choice against the need to maintain ethical standards of professional responsibility. See <u>People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.</u>, P.2d 371, 378 (Cal. 1999).

In successive representation cases, a client moves to disqualify his or her former counsel from representing a successive

client in current litigation adverse to the former client's interests. M'Guinness, 196 Cal. Rptr. 3d at 670. The former client must "demonstrate a 'substantial relationship' between the subjects of the antecedent and current representation" to succeed on a motion to disqualify counsel. Id. (quoting Flatt v. Superior Court, 885 P.2d 950, 954 (Cal. 1994) (en banc)). "A substantial relationship exists where 'the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation.'" Id. (quoting City & Cty. of San Francisco v. Cobra Sols., Inc., 135 P.3d 20, 25 (Cal. 2006)). See also Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, 81 Cal. Rptr. 2d 425, 432 (Ct. App. 1999) (stating that the "substantial relationship" test requires looking at the factual similarities, legal questions, and nature and extent of attorney involvement).

"The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." California Self-Insurers' Sec. Fund v. Superior Court, 228 Cal. Rptr. 3d 546, 550 (Ct. App. 2018), review denied (May 9, 2018).

B. Discussion

The most factually analogous case presented to the Court is Khani v. Ford Motor Company, 155 Cal. Rptr. 3d 532 (Ct. App. 2013). There, as here, an attorney who previously defended an automobile company in lemon law cases switched positions and began to represent vehicle owners suing his former client. Id. at 533-34. The appellate court reversed the trial court's grant of the motion to disqualify the plaintiff's counsel, holding that the trial court

erred in concluding that the cases were substantially related just because they involved claims under the same statute. Id. at 536.

In this case, like Khan, the vehicle in question and its repair history was not the subject of a prior lawsuit in which Bullock represented FCA. However, unlike Khan, many factors unique to this situation are closely related. The time between representations is only mere months, rather than the four years in Khan, and accordingly FCA's people, policies, and litigation strategies remain the same. As FCA argued in its reply brief:

> As it has only been a few months since Bullock has been operating on her own (and she is already suing her former client), little to nothing has changed about the way FCA manages its cases—the same people are in charge, with the same policies, and the same strategies. Bullock knows exactly how FCA will evaluate and respond to the claims filed against it under the Song-Beverly Consumer Warranty Act. As Bullock was frequently responsible for preparing for various depositions and preparing FCA corporate representatives and expert witnesses for those depositions, Bullock has obtained knowledge and insight into the strengths and weaknesses of those witnesses and pressure points FCA may have in regard to their testimony. Further, how FCA "handles cases; why it settles certain cases and not others; how and why FCA responds to discovery, its perceived vulnerabilities, how it defends the vulnerabilities, its perception of its pressure points and how Plaintiffs' firms exploit them" are, in fact, material to every litigation of a lemon law case against FCA. This materiality exists regardless of the model vehicle involved.

Reply at 6. In her prior representation, Bullock participated in the evaluation, defense, and settlement of cases for FCA. FCA provided Bullock with the information necessary to conduct investigations, defend depositions, and negotiate with plaintiffs. Additionally, Bullock took part in a FCA training program and signed a non-disclosure agreement as part of that training.

As other courts have noted, "[a] 'substantial relationship'

does not necessarily mean an exact match between the facts and issues involved in the two representations." W. Sugar Coop. v. Archer-Daniels-Midland Co., 98 F. Supp. 3d 1074, 1087 (C.D. Cal. 2015) (citing cases). Based on evidence submitted with this motion, the Court finds that Bullock was personally involved in providing legal advice and services on a legal issue that is closely related to the legal issue in the present representation. City & Cty. of San Francisco v. Cobra Sols., Inc., 135 P.3d 20, 25 (Ct. App. 2006). As a result, the Court also finds that Bullock possesses confidential information because of her prior representation. Id.

After weighing the interests of Plaintiffs' right to chosen counsel and the prejudice they would face if Bullock were disqualified against the paramount concern of preserving public trust in the scrupulous administration of justice and the integrity of the bar, the Court concludes that Bullock and her law firm must be disqualified. SpeeDee Oil, 980 P.2d at 378. Although this result may impose hardship on Plaintiffs, "the important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." Id.

### III. ORDER

For the reasons set forth above, the Court GRANTS Defendants' Motion to Disqualify Plaintiffs' Counsel and law firm, the Law Office Patrea R. Bullock. Plaintiffs shall have 45 days from the date of this Order to find and retain a new attorney. If new counsel does not enter an appearance within this 45-day time period, Plaintiffs will be required to represent themselves. The case would then be referred to Magistrate Judge Claire pursuant to

the Court's Local Rules.  This case shall be stayed during this 45-day time period, i.e. no discovery may be conducted and no motions may be filed by any party.

IT IS SO ORDERED.

Dated: July 11, 2018

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE